IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | |
|---|---|
| TIARA N. JOHNSON, | |
| Plaintiff, | Civil Action No. 22-cv-00033-RDB |
| v. | |
| FACEBOOK, INC. and JOHN DOE, | *Electronically filed* |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT FACEBOOK, INC.'S MOTION TO DISMISS
<u>OR, IN THE ALTERNATIVE, TO TRANSFER VENUE</u>**

## TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................... 1

II.  BACKGROUND .................................................................................................... 2

  A.  Plaintiff's Claims ............................................................................................ 2

  B.  Procedural History .......................................................................................... 3

III. ARGUMENT ......................................................................................................... 3

  A.  The Complaint Should Be Dismissed Because Facebook Is Not Subject to Personal Jurisdiction in This Forum ............................................................... 3

    1.  Facebook is Not Subject to General Personal Jurisdiction in Maryland ............ 5

    2.  Plaintiff has Not Established that This Court May Exercise Specific Jurisdiction over Facebook ............................................................................ 6

  B.  The Complaint Should Be Dismissed Because Plaintiff Fails to State a Claim .......... 7

    1.  Plaintiff Fails to State a Claim for Breach of Contract (Count I) ...................... 8

    2.  Plaintiff Fails to State a Claim for Tortious Interference with Prospective Relations (Count III) ...................................................................................... 10

    3.  Plaintiff Fails to State Federal and Common Law Trademark and Unfair Competition Claims ....................................................................................... 12

  C.  Section 230 of the Communications Decency Act Separately Bars Counts I, III, and VII .......................................................................................................... 18

    1.  Facebook Is a "Provider" of an "Interactive Computer Service" ..................... 20

    2.  The Complaint Is Based on Information Provided by Another Information Content Provider ........................................................................................... 21

    3.  Plaintiff Seeks to Treat Facebook as a Publisher or Speaker ......................... 22

  D.  In the Alternative, the Case Should Be Transferred to the Northern District of California ...................................................................................................... 24

    1.  The Parties Agreed to Litigate in the Northern District of California .............. 24

    2.  The Forum-Selection Clause Is Valid ............................................................ 25

    3.  Plaintiff Cannot Show Any Extraordinary Circumstances to Rebut the Presumption that this Court Should Enforce the Forum-Selection Clause. ...... 26

IV.  CONCLUSION ...................................................................................................... 26

## TABLE OF AUTHORITIES

*Abbott v. Gordon*,
No. CIVA DKC 09-0372, 2009 WL 2426052 (D. Md. Aug. 6, 2009)....................................10

*Alexander & Alexander, Inc. v. B. Dixon Evander & Associates, Inc.*,
336 Md. 365 (Md. 1994)...........................................................................................................11

*ALS Scans, Inc. v. Digital Service Consultants, Inc.*,
293 F.3d 707 (4th Cir. 2002) .................................................................................................4, 5

*ASCO Healthcare, Inc. v. Heart of Texas Health Care & Rehab., Inc.*,
540 F. Supp. 2d 634 (D. Md. 2008) ..........................................................................................6

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..........................................................................................................7, 8, 10, 12

*Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tx.*,
571 U.S. 49 (2013)..............................................................................................................24, 25

*BAE Sys. Tech. Sol. & Servs., Inc. v. Republic of Korea's Def. Acquisition Program Admin.*,
884 F.3d 463 (4th Cir. 2018) ...................................................................................................25

*Baron Fin. Corp. v. Natanzon*,
471 F. Supp. 2d 535 (D. Md. 2006).....................................................................................10, 11

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................................................................................................................7

*Beyond Sys., Inc. v. Keynetics, Inc.*,
422 F. Supp. 2d 523 (D. Md. 2006).........................................................................................22

*Beyond Systems, Inc. v. Realtime Gaming Holding Co.*,
388 Md. 1 (Md. 2005)..............................................................................................................4, 7

*Brittingham v. Jenkins*,
914 F.2d 447 (4th Cir. 1990) ...................................................................................................14

*Brooklyn Bottling of Milton, N.Y., Inc. v. Ecuabeverage Corp.*,
2008 WL 577299 (S.D.N.Y. Mar. 3, 2008) ............................................................................14

*Carefirst of Maryland, Inc., v. Carefirst Pregnancy, Inc.*,
334 F.3d 390 (4th Cir. 2003) .................................................................................................4, 6

*CareFirst of Maryland, Inc. v. First Care, P.C.*,
    434 F.3d 263 (4th Cir. 2006) ...................................................................13, 14, 15

*Carter v. Aramark Sports and Entm't Servs., Inc.*,
    153 Md. App. 210 (Md. 2003) .................................................................................10

*Clarke Veneers & Plywood, Inc. v. Mentakab Veneer & Plywood, SDN BHD*,
    821 F. App'x 243 (4th Cir. 2020) ............................................................................4

*Combs v. Bakker*,
    886 F.2d 673 (4th Cir. 1989) ..................................................................................5

*CSR, Ltd. v. Taylor*,
    411 Md. 457 (Md. 2009) ..........................................................................................4

*Cutcher v. Midland Funding, LLC*,
    No. ELH-13-3733, 2014 WL 2109916 (D. Md. May 19, 2014) ...............................5

*Daimler AG v. Baumann*,
    571 U.S. 117 (2014) ................................................................................................5

*Doe v. MySpace, Inc.*,
    528 F.3d 413 (5th Cir. 2008) ................................................................................20

*Dolin v. Facebook, Inc.*,
    289 F. Supp. 3d 1153 (D. Haw. 2018) ..................................................................25

*Edmonson Village Theatre v. Einbinder*,
    208 Md. 38 (Md. 1955)..........................................................................................16

*Energy Intel. Grp., Inc. v. UBS Fin. Servs., Inc.*,
    2009 WL 1490603 (S.D.N.Y. 2009).................................................................13, 14

*Everest Capital Ltd. v. Everest Funds Mgmt.*,
    LLC, 393 F.3d 755 (8th Cir.2005).........................................................................17

*Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*,
    521 F.3d 1157 (9th Cir. 2008) ..............................................................................22

*Field of Screams, LLC v. Olney Boys and Girls Comm. Sports Ass'n*,
    2011 WL 890501 (D. Md. Mar. 14, 2011).......................................................17, 18

*Force v. Facebook, Inc.*,
    934 F.3d 53 (2d Cir. 2019), cert. denied, 140 S.Ct. 2761 (2020) ...........................20

*Francis v. Giacomelli*,
    588 F.3d 186 (4th Cir. 2009) ..................................................................................8

*Franklin v. X Gear 101, LLC*,
   No. 17CIV6452GBDGWG, 2018 WL 3528731 (S.D.N.Y. July 23, 2018) ...........................15

*Fyk v. Facebook, Inc.*,
   808 F. App'x 597 (9th Cir. 2020) .........................................................................................20

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
   564 U.S. 915 (2011)................................................................................................................4

*Hearn Insulation & Improvement Co., Inc. v. Carlos Bonilla*,
   No. CV AW-09-990, 2010 WL 3069953 (D. Md. Aug. 5, 2010)...........................................11

*Int'l Shoe Co. v. Washington*,
   326 U.S. 310 (1945)................................................................................................................6

*Intercollegiate Women's Lacrosse Coaches Assoc. v. Corrigan Sports
   Enterprises, Inc.*,
   505 F. Supp. 3d 570 (M.D.N.C. 2020) ...........................................................................17, 18

*Jefferson v. Zuckerberg*,
   No. CV RDB-17-3299, 2018 WL 3241343 (D. Md. July 3, 2018) ....................................5, 20

*Jones v. Twitter, Inc.*,
   No. CV RDB-20-1963, 2020 WL 6263412 (D. Md. Oct. 23, 2020) ..........................20, 21, 23

*JTH Tax LLC v. DM3 Ventures, Inc.*,
   2020 WL 6551214 (E.D. Va. Nov. 6, 2020)...............................................................12, 13, 14

*Klayman v. Zuckerberg*,
   753 F.3d 1354 (D.D.C. June 13, 2014)................................................................................20

*Lopez v. BigCommerce, Inc.*,
   Case No. 16-cv-8970, 2017 WL 3278932 (S.D.N.Y. Aug. 1, 2017)......................................15

*Louis Vuitton v. Haute Diggity Dog*,
   507 F.3d 252 (4th Cir. 2007) ...............................................................................................17

*Macklin v. Robert Logan Assocs.*,
   334 Md. 287 (Md. 1994).................................................................................................10, 11

*Marshall Tucker Band, Inc. v. M T Indus., Inc.*,
   238 F. Supp. 3d 759 (D.S.C. 2017)......................................................................................15

*Mayson-Dixon Strategic Consulting*,
   324 F. Supp. 3d 569 (D. Md. 2018)......................................................................................13

*Miller v. Facebook, Inc.*,
No. 1:09-CV-2810-RLV, 2010 WL 9525523 (N.D. Ga. Jan. 15, 2010) ..........................25, 26

*Mohamed v. Michael*,
279 Md. 653 (Md. 1977)...................................................................................................4

*Moseley v. V Secret Catalogue, Inc.*,
537 U.S. 418 (2003)........................................................................................................17

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
564 F. Supp. 2d 544 (E.D. Va. 2008) ...............................................................................20

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
591 F.3d 250 (4th Cir. 2009) ........................................................19, 20, 21, 22, 23

*Oeste v. Zynga, Inc.*,
No. CV GLR-20-1566, 2021 WL 1785139 (D. Md. May 5, 2021)........................................25

*Paradise Wire & Cable Defined Benefit Pension Plan v. Weil, Jr.*,
918 F.3d 312 (4th Cir. 2019) ...........................................................................................7

*People for Ethical Treatment of Animals v. Doughney*,
263 F.3d 359 (4th Cir. 2001) ...................................................................................13, 16

*Potomac Conf. Corp. of Seventh-Day Adventists v. Takoma Acad. Alumni Assoc.*,
2 F. Supp. 3d 758 (D. Md. 2014) .....................................................................................12

*Rao v. Era Alaska Airlines*,
22 F. Supp. 3d 529 (D. Md. May 28, 2014)...........................................................................5

*Resorts of Pinehurst, Inc. v. Pinehurst Nat'l Corp.*,
148 F.3d 417 (4th Cir. 1998) ..........................................................................................16

*Revene v. Charles County Com'rs*,
882 F.2d 870 (4th Cir. 1989) ............................................................................................7

*Ringling Bros.-Barnum & Bailey Combined Shows, Inc. v. Utah Div. of Travel Develop.*,
170 F.3d 449 (4th Cir. 1999) .....................................................................................17, 18

*Rivera v. Altec, Inc.*,
2021 WL 2784265 (D. Md. Jul. 2, 2021)...........................................................................6, 7

*Rosetta Stone Ltd. v. Google, Inc.*,
676 F.3d 144 (4th Cir. 2012) ..........................................................................................17

*RRC Ne., LLC v. BAA Maryland, Inc.*,
   413 Md. 638 (Md. 2010).............................................................................................8

*Russell v. Implode-Explode Heavy Indus. Inc.*,
   No. CVDKC 08-2468, 2013 WL 5276557 (D. Md. Sept. 18, 2013)......................................22

*Schneider v. Amazon.com, Inc.*,
   108 Wash. App. 454 (2001)........................................................................................23

*Shaffer v. Heitner*,
   433 U.S. 186 (1977)................................................................................................6

*Sikhs for Justice, Inc. v. Facebook, Inc.*,
   697 F. App'x 526 (9th Cir. 2017) ...............................................................................20

*Sterling Acceptance Corp. v. Tommark, Inc.*,
   227 F. Supp. 2d 454 (D. Md. 2002).............................................................................16

*Stoddard v. Subaru of Am., Inc.*,
   No. CV PWG-20-2164, 2021 WL 3472129 (D. Md. Aug. 6, 2021) ......................................7

*Stover v. O'Connell Assocs., Inc.*,
   84 F.3d 132 (4th Cir. 1996) ......................................................................................4

*Under Armour, Inc. v. Battle Fashions, Inc.*,
   No. CV RDB-17-3223, 2019 WL 3239001 (D. Md. July 18, 2019) ......................................6

*United Black Firefighters v. Hirst*,
   604 F.2d 844 (4th Cir.1979) .....................................................................................8

*United States of America for the Use and Benefit of John E. Kelly & Sons Elec.*
*Construction, Inc. v. Hartford Fire Ins. Co.*,
   CVNo. 8:19-cv-02924-PX, 2020 WL 704989 (D. Md. Feb. 12, 2020)..................................24

*Walden v. Fiore*,
   134 S. Ct. 1115 (2014)............................................................................................6

*We Are The People, Inc. v. Facebook, Inc.*,
   No. 19-cv-8871(JMF), 2020 WL 2908260 (S.D.N.Y. June 3, 2020) ....................................25

*Willner v. Dimon*,
   849 F.3d 93 (4th Cir. 2017) ......................................................................................7

*Zeran v. Am. Online, Inc.*,
   129 F.3d 327 (4th Cir. 1997) .........................................................................19, 20, 22, 23

**Statutes**

15 U.S.C. § 1114.................................................................................................12, 13, 14, 15

15 U.S.C. § 1125(a).................................................................................................12, 13, 15

15 U.S.C. § 1125(c).................................................................................................16, 17, 18

28 U.S.C. § 1404(a)........................................................................................................1, 24

47 U.S.C. § 230................................................................................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 12(b)(2)....................................................................................................1, 7

Fed. R. Civ. P. 12(b)(6)....................................................................................................1, 7

Defendant Facebook, Inc.,[1] by its counsel, respectfully submits this memorandum of law in support of its Motion to Dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6), or in the alternative, to Transfer Venue to the United States District Court for the Northern District of California pursuant to 28 U.S.C. § 1404(a).

## I.    INTRODUCTION

Facebook operates Instagram, a service where people can open accounts for free and express themselves through photos, videos, and private messaging, and connect with and shop from their favorite businesses and creators.  On December 2, 2021, Plaintiff Tiara N. Johnson ("Plaintiff") brought suit against Facebook because her Instagram account was disabled in July 2021, and other unidentified users have since opened accounts on the platform that purportedly imitate her and/or infringe her trademarks.  But the Complaint fails at the outset because Plaintiff brought suit in a forum where the court has no jurisdiction over Facebook.

Moreover, all counts fail to state a claim.  Count I alleges breach of contract but fails to state a claim because the Terms of Use at issue make clear that Facebook's conduct does not constitute breach.[2]  Counts III through VIII also fail because the Complaint largely relies on bare recitations of the legal elements of the claim and lacks sufficient factual allegations that would plausibly show that Plaintiff is entitled to relief.  And several of the claims are barred outright by Section 230 of the Communications Decency Act, providing a separate basis for dismissal.  None of Plaintiff's seven counts against Facebook, on its face, is viable, and the Complaint should be

---

[1] On October 28, 2021, Facebook, Inc. changed its name to Meta Platforms, Inc. Given the case caption and for ease of reference, the company will be referred to as "Facebook" throughout.

[2] Count II of the Complaint alleges one count of tortious interference with contractual relations only against John Doe (Compl. ¶ 23-28).

1

dismissed.

Should the Court decline to dismiss all of the claims alleged against Facebook, any remaining claims should be transferred to the Northern District of California, where Plaintiff has agreed to litigate any dispute with Facebook pursuant to a valid forum selection clause. This memorandum of law, however, outlines the fatal flaws to the Complaint that should compel, first, the grant of Facebook's motion to dismiss the Complaint in its entirety, with prejudice.

## II.     BACKGROUND

### A.     Plaintiff's Claims

Plaintiff alleges that around July 1, 2021, her Instagram account @LICKMYKAKEZ was disabled. Compl. ¶¶ 1, 17, 19. Plaintiff used this account in connection with her business selling adult toys. Compl. ¶ 1. Plaintiff alleges that her account was disabled because a "John Doe" was paid to "bring her account down." Compl. ¶ 19.

Plaintiff alleges that Facebook is liable for breach of contract and a number of commercial torts because she has been unable to contact Facebook's Help Center and Facebook "failed to communicate" why her account was disabled or blocked. Compl. ¶ 18. In the time since her account was allegedly disabled, Plaintiff has observed "new false and imitation [Instagram] accounts" appear on Instagram that allegedly infringe her trademark, "KAKEYTAUGHTME." Compl. ¶¶ 15, 21; Compl. Ex. C. The Complaint does not allege, however, that Facebook itself created or uses any of these alleged "imitation" accounts.

Based on these factual allegations, Plaintiff brings seven separate causes of action against Facebook: breach of contract (Count I), tortious interference with prospective relations (Count III), federal trademark infringement (Count IV), federal unfair competition (Count V), federal trademark dilution (Count VI), unfair and deceptive trade practices (Count VII), and common

law trademark and unfair competition (Count VIII).

Count II of the Complaint alleges one count of tortious interference with contractual relations only against John Doe.  Compl. ¶¶ 23-31.

### B.    Procedural History

Plaintiff originally brought suit in Maryland state court on December 2, 2021, and Facebook timely removed to this Court on January 6, 2022.  *See* Facebook's Notice of Removal, Dkt. 1.  The Court extended the time for Facebook to answer or otherwise respond to the Complaint until January 21, 2022.  *See* Order at 1, Dkt. No. 4.

## III.    ARGUMENT

The Complaint should be dismissed on multiple grounds.  First, the entirety of the Complaint must be dismissed because Plaintiff cannot establish that this Court has personal jurisdiction over Facebook.  Second, the Complaint independently fails to state any viable claim against Facebook.  Several claims fail to allege necessary elements of the claim.  Others are devoid of sufficient factual allegations that, accepted as true, plausibly show that Plaintiff would be entitled to relief.  Third, Section 230 of the Communications Decency Act separately bars several counts against Facebook.  Finally, Plaintiff previously agreed to exclusively bring any dispute with Facebook to be resolved in the U.S. District Court for the Northern District of California (or San Mateo County state court).  To the extent any portion of this Complaint should survive, it should be transferred.

### A.    The Complaint Should Be Dismissed Because Facebook Is Not Subject to Personal Jurisdiction in This Forum

As a threshold matter, Facebook is not subject to personal jurisdiction in this forum and the Complaint should be dismissed in its entirety for this reason alone.  Personal jurisdiction is

exercised in accordance with the law of the state, and it is well-settled that "to assert personal jurisdiction over a nonresident defendant, two conditions must be satisfied: (1) the exercise of jurisdiction must be authorized under the state's long-arm statute; and (2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment." *Carefirst of Maryland, Inc. v. Carefirst Pregnancy, Inc.*, 334 F.3d 390, 396 (4th Cir. 2003); *see also Clarke Veneers & Plywood, Inc. v. Mentakab Veneer & Plywood, SDN BHD*, 821 F. App'x 243, 244 (4th Cir. 2020). Maryland's courts have "consistently held that the purview of [Maryland's] long arm statute is coextensive with the limits of personal jurisdiction set by the due process clause of the Federal Constitution." *Beyond Systems, Inc. v. Realtime Gaming Holding Co.*, 388 Md. 1, 15 (Md. 2005) (citing *Mohamed v. Michael*, 279 Md. 653, 657 (Md. 1977)); *see also CSR, Ltd. v. Taylor*, 411 Md. 457, 473 (Md. 2009) (stating that the long-arm statute authorizes the exercise of personal jurisdiction "to the full extent allowable under the Due Process Clause"). Although the long-arm and constitutional due process requirements are distinct, they can be evaluated in tandem. *See Stover v. O'Connell Assocs., Inc.*, 84 F.3d 132, 135-36 (4th Cir. 1996) ("Because the limits of Maryland's statutory authorization for the exercise of personal jurisdiction are coterminous with the limits of the Due Process Clause, the statutory inquiry necessarily merges with the constitutional inquiry, and the two inquiries essentially become one.").

Due process jurisprudence recognizes two forms of personal jurisdiction: general jurisdiction, in which a defendant is so "at home" in the forum that a court may adjudicate claims against it arising from anywhere in the world; and specific jurisdiction, in which a court may adjudicate claims that arise out of the out-of-state defendant's contacts with the forum state. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011); *see also ALS*

4

*Scans, Inc. v. Digital Service Consultants, Inc.*, 293 F.3d 707, 711–12 (4th Cir. 2002); *Daimler AG v. Baumann,* 571 U.S. 117, 122 (2014).  It is Plaintiff's burden to allege sufficient facts to establish personal jurisdiction.  *See Rao v. Era Alaska Airlines*, 22 F. Supp. 3d 529, 540 (D. Md. May 28, 2014) (citing *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989)).  Plaintiff has failed to do so.

> 1.     <u>Facebook is Not Subject to General Personal Jurisdiction in Maryland</u>

As a Delaware corporation with its principal place of business in Menlo Park, California, Facebook is not subject to general jurisdiction in Maryland because it is not "at home" in this forum.  *Daimler,* 571 U.S. at 122*; see also Cutcher v. Midland Funding, LLC*, No. ELH-13-3733, 2014 WL 2109916, at *4 (D. Md. May 19, 2014) (quoting *Daimler*, 517 U.S. at 139); *Jefferson v. Zuckerberg*, No. CV RDB-17-3299, 2018 WL 3241343, at *3 n. 8 (D. Md. July 3, 2018) (noting Facebook's citizenship).  The inquiry "is not whether a foreign corporation's in-forum contacts can be said to be in some sense 'continuous and systematic,' it is whether that corporation's affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Cutcher*, 2014 WL 2109916 at *4 (quoting *Daimler*, 571 U.S. at 139).  Under this analysis, a corporate defendant is therefore generally subject to general jurisdiction only in (i) the state of its principal place of business, and (ii) the state of its incorporation.  *Daimler*, 571 U.S. at 137.

Because Facebook is incorporated in Delaware and its principal place of business is in California, *see* Decl. of J. Pricer, Dkt. No. 1-1, Plaintiff would need to allege some other set of contacts Facebook has with Maryland so substantial as to render Facebook "at home" in this state.  But the Complaint only alleges that Facebook "is a corporation registered to do business in the State of Maryland."  Compl. ¶ 2.  As this Court has found, this is simply not enough to render

this an "exceptional" case where the Court could find that Facebook's presence is "so substantial as to render [defendant] essentially at home in this State." *Rivera v. Altec, Inc.*, 2021 WL 2784265 (D. Md. Jul. 2, 2021) (finding no general jurisdiction where defendant registered to do business in Maryland and also sold parts to Maryland residents) (internal quotations omitted). There is no general jurisdiction over Facebook in Maryland.

        2.    <u>Plaintiff has Not Established that This Court May Exercise Specific Jurisdiction over Facebook</u>

Plaintiff cannot establish that this Court may exercise "specific jurisdiction" over Facebook, either. To determine whether specific jurisdiction exists over a non-resident defendant the Court considers the extent to which "(1) the nonforum defendant purposely directed its activities toward residents of the forum state or purposely availed itself of the privilege of conducting activities therein; (2) plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; ***and*** (3) the forum's exercise of personal jurisdiction in the case is reasonable, i.e., is consistent with fair play and substantial justice." *ASCO Healthcare, Inc. v. Heart of Texas Health Care & Rehab., Inc.*, 540 F. Supp. 2d 634, 640 (D. Md. 2008) (internal quotations omitted). In other words, the Complaint must establish a sufficient "relationship among [Facebook], the forum, and the litigation." *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977). The claims that arise out of "suit-related conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014); *see also Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Under Armour, Inc. v. Battle Fashions, Inc.*, No. CV RDB-17-3223, 2019 WL 3239001, at *5 (D. Md. July 18, 2019) (inquiry seeks to establish whether "there is an affiliation between the forum and the underlying controversy") (citing *Carefirst of Maryland, Inc.*, 334 F.3d at 397) (internal quotations omitted).

Under this analysis, the Complaint fails to establish personal jurisdiction because Plaintiff has not "alleged any facts in the Complaint that demonstrate a connection between [her] claims and [Facebook's] contacts in Maryland." *Rivera*, 2021 WL 2784265 at *10 (finding no specific jurisdiction and granting motion to dismiss).  Specifically, the Complaint does not connect Facebook's registration to do business in Maryland with the alleged disabling of Plaintiff's Instagram account or third parties' creation of allegedly "false and imitation accounts," which is the specific conduct underlying Plaintiff's claims.  That Facebook operates a website that can be accessed from anywhere in the world, including Maryland, is immaterial to the jurisdictional analysis.  *See Beyond Systems, Inc.*, 388 Md. at 25; *see also Stoddard v. Subaru of Am., Inc.*, No. CV PWG-20-2164, 2021 WL 3472129, at *6 (D. Md. Aug. 6, 2021) (declining to extend personal jurisdiction to out-of-state defendants "based on little more than their presence on the Internet.").  Accordingly, the complaint should be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(2).

**B.      The Complaint Should Be Dismissed Because Plaintiff Fails to State a Claim**

Even setting aside the jurisdictional issue, the Complaint should be independently dismissed because it does not allege facts—even if accepted as true—that would entitle Plaintiff to relief under any of her claims.  To survive a 12(b)(6) motion to dismiss, a complaint must have "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 663 (2009) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)); *see also Paradise Wire & Cable Defined Benefit Pension Plan v. Weil, Jr.*, 918 F.3d 312, 317 (4th Cir. 2019); *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017).  While a court at this stage must accept a claim's well-pleaded factual allegations as true, the court need not accept unsupported legal allegations, *Revene v. Charles County Com'rs.*, 882 F.2d 870, 873 (4th

7

Cir. 1989), legal conclusions couched as factual allegations, *Iqbal*, 556 U.S. at 679, or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir.1979); *see also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009).  Given this framework, Plaintiff has failed to state a claim for breach of contract (Count I), tortious interference with prospective relations (Count III), state law unfair and deceptive trade practices (Count VII), and federal or common law trademark and unfair competition (Counts IV, V, VI, VIII).  The Complaint should be dismissed as against Facebook.

        1.    <u>Plaintiff Fails to State a Claim for Breach of Contract (Count I)</u>

Count I fails because the Complaint does not allege the existence of contractual obligations owed to Plaintiff that Facebook would have purportedly breached.  Under Maryland law, to state a claim for breach of contract, the plaintiff must "allege the existence of a contractual obligation owed by the defendant to the plaintiff, and a material breach of that obligation by the defendant." *RRC Ne., LLC v. BAA Maryland, Inc.,* 413 Md. 638 (Md. 2010) The Complaint includes the contract at issue as an exhibit—the Instagram Terms of Use—which on its face establishes Plaintiff's failure to state a claim for breach of contract.

According to the Complaint, the alleged conduct that forms the basis for Plaintiff's claim comprises: (1) disabling her account despite her "not violat[ing] any term of use,"[3] (2) failing to communicate with Plaintiff as to why her account was disabled or blocked, and (3) "permit[ting] new false and imitation accounts" that claim to be Plaintiff and violate Plaintiff's trademark to exist on the platform.  Compl. ¶¶ 17, 18, 21.  However, the contractual provisions on which

---

[3] Plaintiff also alleges certain facts concerning communications she had with one John Doe, but does not allege that John Doe was in any way related to or connected with Facebook.  Compl. ¶¶ 19-20.

Plaintiff relies clearly show that none of this alleged conduct by Facebook would constitute breach of any existing contractual obligation.

First, even accepting Plaintiff's allegation as true that she did not violate any term of use, Plaintiff has failed to allege how the contract thereby obliges Facebook to refrain from disabling her account.  To the contrary, the Instagram Terms of Use provide that Facebook "can remove any content or information" if Facebook believes there is a violation of the Instagram Terms of Use, *or if it is "permitted . . . to do so by law*," or "refuse to provide or stop providing all or part of the Service to you (including terminating or disabling your access . . .) . . . *to protect our community*."  Compl. ¶ 13, Ex. A (emphasis added).  Facebook's disabling of Plaintiff's Instagram account, even if true as pled, does not constitute breach.

Second, the Instagram Terms of Use do not establish Facebook's contractual obligation to communicate with Plaintiff the reasons why her account was disabled.  Plaintiff does not point to any provision of the Instagram Terms of Use that would require Facebook to provide her with an explanation, and Exhibit A is clear there is none.  *See* Compl. ¶ 13, Ex. A.  Plaintiff therefore fails to state a claim of breach based on Facebook's alleged failure to communicate with Plaintiff.  Similarly, the Instagram Terms of Use nowhere remotely suggest, much less establish an agreement to, a contractual obligation on Facebook's part to prevent the creation of allegedly "false or imitation" accounts.[4]

Having failed to identify the contractual obligations that Facebook would have breached

---

[4] The Instagram Terms of Use do not condone users "infring[ing] other people's intellectual property rights."  *See* Compl. ¶ 13, Ex. A.  Rights holders are able to report to Facebook content that they believe violates their intellectual property rights, and Facebook diligently investigates these reports.  The Complaint does not allege that Plaintiff reported these "imitation" accounts to Facebook or that Facebook was aware that they had been created on the Instagram platform.

by its conduct, Plaintiff's Count I must fail and should be dismissed.

> 2.   Plaintiff Fails to State a Claim for Tortious Interference with Prospective Relations (Count III)

Count III fails because the Complaint does not plead several elements of the tort of tortious interference with prospective business relations under Maryland law.  To state a claim, plaintiff must show: "(1) intentional and willful acts; (2) calculated to cause damage to the plaintiff in [her] lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants (which constitutes malice); and (4) actual damage and loss resulting."  *Abbott v. Gordon*, No. CIVA DKC 09-0372, 2009 WL 2426052, at *7 (D. Md. Aug. 6, 2009) (citing *Carter v. Aramark Sports and Entm't Servs., Inc.*, 153 Md. App. 210, 240 (Md. 2003)).  Maryland courts require that plaintiff show "both a tortious intent ***and*** improper or wrongful conduct."  *Macklin v. Robert Logan Assocs.*, 334 Md. 287, 301 (Md. 1994) (emphasis added).  Moreover, to survive a motion to dismiss, the claim must allege and identify "a possible future relationship which is likely to occur, absent the interference, with specificity."  *Baron Fin. Corp. v. Natanzon*, 471 F. Supp. 2d 535, 546 (D. Md. 2006) ("[W]ithout this showing, it is unclear how any of the following elements could be established: causation . . . damages . . . or indeed the defendants' wrongful intent to interfere with the relationship.").

Beyond a formulaic recitation of the legal elements, the Complaint does not allege any facts that would plausibly state Facebook's tortious intent; nor did Plaintiff identify the specific prospective relationships that were purportedly interfered with.  *See* Compl. ¶ 37 (alleging without more that Facebook's conduct was "intentional, willful, and calculated to cause damage to Plaintiff's lawful business."); *see also Iqbal*, 556 U.S. at 678 (finding a "formulaic recitation

of the elements" insufficient to survive motion to dismiss).  As to the first, the Complaint is devoid of facts (let alone plausible facts) alleging that Facebook tortiously or maliciously **intended** to interfere with Plaintiff's business or prospective customers.  As to the second, Plaintiff has failed to identify any future relationship at all that was likely to occur absent the alleged interference, let alone any one with specificity.  *See id.*  In *Baron*, this Court dismissed a tortious interference claim because the plaintiff made "vague and unformed" allegations of interference that merely "hint[ed] at some damage to his relationship with some unidentified ISOs at some future time in some future business he might have."  471 F. Supp. 2d at 546.  Plaintiff alleges even less here than the *Baron* plaintiff, pointing only to past sales figures.  The Complaint fails to allege facts about any specific would-be customer that she lost as a result of the disabling of her Instagram account.

Finally, because this tortious interference claim merely mirrors the breach of contract claim pled in Count I, the failure of Count I to state a claim dooms Count III as well.  Maryland courts have "refused to adopt any theory of tortious interference with contract or with economic relations that converts a breach of contract into an intentional tort." *Hearn Insulation & Improvement Co., Inc. v. Carlos Bonilla*, No. CV AW-09-990, 2010 WL 3069953, at *10 (D. Md. Aug. 5, 2010) (quoting *Alexander & Alexander, Inc. v. B. Dixon Evander & Associates, Inc.*, 336 Md. 365, 654 (Md. 1994)).  Given that Plaintiff has failed to plead that Facebook breached and thereby acted improperly, there simply is no underlying wrongful act that would sustain a would-be parallel tortious interference claim.  *Macklin v. Robert Logan Associates*, 334 Md. 287, 30 (Md. 1994) ("Patently, where the defendant acts properly, he or she does not tortiously interfere with a plaintiff's prospective contractual relations even though that is the necessary, and intended, consequence of the competition.").

For the above reasons, Count III should be dismissed.

      3.      <u>Plaintiff Fails to State Federal and Common Law Trademark and Unfair Competition Claims</u>

Plaintiff does not sufficiently allege any of her remaining causes of action against Facebook. At the outset, Counts IV (federal trademark infringement under 15 U.S.C. § 1114), V (federal unfair competition pursuant to 15 U.S.C. § 1125(a)), VI (federal trademark dilution), VII (state law unfair and deceptive trade practices), and VIII (Maryland common law trademark and unfair competition) consist of cursory recitations of the legal elements and are devoid of factual matter that, if true, would state a claim to relief that is plausible on its face. *See* Compl. ¶¶ 43-46, 51-52, 55-58, 60-61, 64-66; *see also Iqbal*, 556 U.S. at 663. "[A] conclusory and formulaic recitation of the elements of a trademark infringement cause of action is insufficient to survive a motion to dismiss." *Potomac Conf. Corp. of Seventh-Day Adventists v. Takoma Acad. Alumni Assoc.*, 2 F. Supp. 3d 758, 768 (D. Md. 2014); *see also JTH Tax LLC v. DM3 Ventures, Inc.*, 2020 WL 6551214, *6 (E.D. Va. Nov. 6, 2020) (dismissing Lanham Act claims for insufficient factual allegations). Here, the Complaint simply does not allege facts to show that there is any infringement of her alleged trademark rights. Moreover, the Complaint fails to allege any facts as to how Facebook—as opposed to the unidentified third parties who opened the "false and imitation accounts"—is using this mark in commerce that would give rise to Facebook's liability for any alleged infringement. *See* Compl. ¶ 21. Counts IV through VIII should be dismissed.

      *a.*      *Plaintiff Fails to State a Claim for Federal Trademark Infringement and Unfair Competition under the Lanham Act (Counts IV and V)*

Plaintiff fails to state a claim for federal Lanham Act trademark infringement under

§ 1114 or unfair competition under § 1125(a)[5] for the simple reason that the Complaint does not allege facts that Facebook is infringing Plaintiff's KAKEYTAUGHTME mark.  To allege a claim for federal trademark infringement under 15 U.S.C. § 1114, a plaintiff must allege she owns a valid registered mark, that the mark was used in commerce without consent "in connection with the sale, offering for sale, distribution, or advertising of any goods," and that the unauthorized use was likely to cause confusion.  *See* 15 U.S.C. § 1114(1)(a); *see also CareFirst of Maryland, Inc. v. First Care, P.C.,* 434 F.3d 263, 267 (4th Cir. 2006) ("To demonstrate trademark infringement under the Lanham Act, a plaintiff must prove, first, that it owns a valid and protectable mark, and, second, that the defendant's use of a reproduction, counterfeit, copy, or colorable imitation of that mark creates a likelihood of confusion.") (internal citations omitted).  The elements of a federal unfair competition claim under 15 U.S.C. § 1125(a) are essentially the same, but generally apply to unregistered marks.  *See People for Ethical Treatment of Animals v. Doughney,* 263 F.3d 359, 364 (4th Cir. 2001); *Mayson-Dixon Strategic Consulting,* 324 F. Supp. 3d 569, 580 (D. Md. 2018) (citations omitted).

Counts IV and V should be dismissed for failing to plead facts as to multiple elements of the claim.  First, the Complaint has not pled facts that would support a claim of infringement of Plaintiff's alleged trademark rights.  *See CareFirst,* 434 F.3d at 267; *see also JTH Tax,* 2020 WL 6551214, at *6-7 (dismissing state and federal trademark claims for failure to allege sufficient facts to show how consumers would be confused); *Energy Intel. Grp., Inc. v. UBS Fin. Servs., Inc.,* 2009 WL 1490603, at *7 (S.D.N.Y. 2009) (dismissing trademark claim for failure to plead likelihood of confusion as marks were obviously dissimilar).  In particular, there are no alleged

---

[5] Counts IV and V relate to the same mark, KAKEYTAUGHTME.  *See* Compl. ¶¶ 41, 49.

facts that would plausibly show infringement under any of the Fourth Circuit likelihood of confusion factors.  *See CareFirst,* 434 F.3d at 267.  For example, there are no factual allegations at all about the similarity of the marks, the similarity of goods or services that the respective marks identify, any similarity of advertising used by the markholders, or indeed any other fact that would plausibly allege likelihood of confusion.  *See id.*  Instead, the Complaint simply lists the account names of some Instagram accounts[6] and then in conclusory fashion recites the statutory language for each claim without supporting factual allegations.  *See* Compl. ¶¶ 42-46, 50-53.  In *JTH,* the court dismissed the plaintiff's trademark claims because they failed to allege facts sufficient to show, among other things, the similarity of the two marks or how the alleged infringing mark would reach consumers so as to cause confusion.  *See JTH Tax*, 2020 WL 6551214, at *6-7.  The Complaint here alleges even less than the plaintiff in *JTH*, and the claims should be dismissed.[7]

Second, even setting aside the Complaint's insufficient factual allegations as to infringement, Counts IV and V still would fail because the Complaint alleges no facts that

---

[6] The other account names listed in Paragraphs 42 and 49 of the Complaint are not similar to Plaintiff's KAKYTAUGHTME mark.  *See* Compl. ¶¶ 42, 49 (listing KAKEYOFFICIAL, KAKEY.B.K.A., _LICKMYKAKEY._, TIARA_KAKEY, KAKEY_PRIVATE101, LICKMYKAKEZ111113, LICKMYKAKEZ123.); *see also Energy Intel. Grp., Inc.*, 2009 WL 1490603, at *7 (dismissing trademark claim where marks were obviously dissimilar).

[7] Moreover, while Plaintiff claims to own the registered mark KAKEYTAUGHTME, the registration on its face states that one Tiara ***Welch***, not Tiara Johnson, is the registrant.  Compl., Ex. B.  This is a further basis to dismiss Count IV.  *See* 15 U.S.C. § 1114(1)(a) (stating "the registrant" is entitled to bring a cause of action); *Brittingham v. Jenkins*, 914 F.2d 447, 452 (4th Cir. 1990) ("[A] certificate of registration of a mark serves as prima facie evidence that registrant owns the registered mark, has properly registered it under the Lanham Act, and is entitled to its exclusive use in commerce."); *see also Brooklyn Bottling of Milton, N.Y., Inc. v. Ecuabeverage Corp.*, 2008 WL 577299, at *1 (S.D.N.Y. Mar. 3, 2008) ("Only the owner of the trademark is granted standing to assert a claim of trademark infringement.").

14

Facebook—as opposed to unidentified third parties—is using Plaintiff's mark in commerce.  *See Marshall Tucker Band, Inc. v. M T Indus., Inc.*, 238 F. Supp. 3d 759, 765 (D.S.C. 2017) (dismissing § 1125(a) claim because "[c]ompletely absent from the SAC are any allegations of Defendants' actual use of the Mark in commerce").  To establish a claim of trademark infringement against Facebook, the Complaint must plead facts that would plausibly show that Facebook is using a confusingly similar mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services.  *See id.*; *see also* 15 U.S.C. § 1114(1)(a); *CareFirst*, 434 F.3d at 267.  The Complaint does not do so.  Beyond the single bare assertion of "Facebook/Instagram's use of confusingly similar mark," Compl. ¶ 44, the Complaint is devoid of factual allegations showing how Facebook is using Plaintiff's mark (or confusingly similar marks) in commerce—i.e., in connection with any commercial transaction.  The Complaint does not allege facts that Facebook created the accounts at issue or that Facebook is selling or advertising goods or services using those accounts.  Instagram's mere display of accounts does not, without any other factual allegations, do not constitute "use in commerce" of a mark.  *See, e.g.*, *Lopez v. BigCommerce, Inc.*, Case No. 16-cv-8970, 2017 WL 3278932 (S.D.N.Y. Aug. 1, 2017) (dismissing trademark infringement claim against platform that merely displayed Plaintiff's mark for failure to plead facts showing use in commerce); *Franklin v. X Gear 101, LLC,* No. 17CIV6452GBDGWG, 2018 WL 3528731 (S.D.N.Y. July 23, 2018), *report and recommendation adopted,* No. 17CIV6452GBDGWG, 2018 WL 4103492 (S.D.N.Y. Aug. 28, 2018) (dismissing trademark infringement claims against Instagram for another user's post that displayed Plaintiff's mark because plaintiff did not allege facts demonstrating use in commerce by Instagram).  This deficiency is separately fatal to Plaintiff's Lanham Act claims, and Counts IV and V should accordingly be dismissed.  *See Marshall Tucker Band*, 238 F. Supp. 3d at 756;

*see also People for Ethical Treatment of Animals*, 263 F.3d at 364.

   b.  *Plaintiff Has Failed to State a Claim for State Law Unfair and Deceptive Trade Practices or Common Law Trademark and Unfair Competition (Counts VII and VIII)*

  For the same reasons outlined above, the Complaint fails to state a claim for unfair and deceptive trade practices or common law trademark and unfair competition.  "[T]he test for trademark infringement and unfair competition under state law is the same as the test under the Lanham Act."  *Sterling Acceptance Corp. v. Tommark, Inc.*, 227 F. Supp. 2d 454, 460 (D. Md. 2002) (citing *Resorts of Pinehurst, Inc. v. Pinehurst Nat'l Corp.*, 148 F.3d 417, 422 (4th Cir. 1998).  As with Counts IV and V, both Counts VII and VIII are predicated on alleged likelihood of confusion or "passing off" based on unauthorized use of Plaintiff's claimed mark.  *See* Compl. ¶¶ 59-62, 63-67.  But the Complaint alleges no facts as to what goods or services that Facebook is purportedly "passing off" as Plaintiff's or more generally how Facebook is unfairly competing with Plaintiff.  *See, e.g.*, *Edmonson Village Theatre v. Einbinder*, 208 Md. 38 (Md. 1955) ("The essential element of unfair competition is deception, by means of which the goods of one dealer are passed off as the goods of another, and the seller receives the profit which he would not have received except for such deception.").  As such, Plaintiff has failed to state a claim as to Counts VII and VIII and they should be dismissed as well.

   c.  *Plaintiff Fails to State a Claim for Federal Trademark Dilution (Count VI)*

  The Complaint fails to state a claim for federal trademark dilution under the Federal Trademark Dilution Revision Act ("TDRA"), 15 U.S.C. § 1125(c).  To establish trademark dilution, a plaintiff must prove that (1) the trademark is famous; (2) the defendant is making a commercial use of the mark in commerce; (3) the defendant's use began after the mark became

famous; and (4) the defendant's use of the mark dilutes the quality of the mark by diminishing the capacity of the mark to identify and to distinguish goods and services. *See, e.g., Ringling Bros.-Barnum & Bailey Combined Shows, Inc. v. Utah Div. of Travel Develop.*, 170 F.3d 449, 452 (4th Cir. 1999), *cert. denied*, 528 U.S. 923 (1999).  A failure to plead sufficient facts to support the plausible inference that the mark is a nationally famous mark warrants dismissal of the claim.  *See Field of Screams, LLC v. Olney Boys and Girls Comm. Sports Ass'n*, 2011 WL 890501 (D. Md. Mar. 14, 2011) (dismissing federal dilution claim for failing to allege sufficient facts that the mark is famous) (quoting *Everest Capital Ltd. v. Everest Funds Mgmt.*, LLC, 393 F.3d 755, 763 (8th Cir.2005)).  Notably, "[t]he judicial consensus is that 'famous' is a rigorous standard" and a mark qualifies only if it is "widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner" and is "truly prominent and renowned."[8] *Id.* (citing *Louis Vuitton v. Haute Diggity Dog*, 507 F.3d 252, 264 (4th Cir. 2007) (quoting 15 U.S.C. § 1125(c)(2)(A)); *Intercollegiate Women's Lacrosse Coaches Assoc. v. Corrigan Sports Enterprises, Inc.*, 505 F. Supp. 3d 570, 588 (M.D.N.C. 2020) (quoting *Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144, 171 (4th Cir. 2012)).

At the outset, Count VI should be dismissed for failure to plead sufficient facts that the KAKEYTAUGHTME mark is famous.  Other than the allegation that Plaintiff has exclusively and continuously used the KAKEYTAUGHTME mark for less than one year followed by the bald assertion that the mark is "famous and well-known," Compl. ¶ 55, the Complaint alleges no facts to plausibly support the inference that the mark is famous.  In *Field of Screams*, this Court

---

[8] "The statute is meant to protect truly famous marks such as Dupont, Buick, and Kodak . . . not every brand of local renown."  *Field of Screams*, 2011 WL 890501 at *9 (quoting *Moseley v. V Secret Catalogue, Inc.*, 537 U.S. 418, 431 (2003)).

dismissed a federal dilution claim for insufficient fact-pleading even though the complaint

alleged facts that tended to show the mark was recognized in the relevant industry and received

attention in national forums, reasoning "those facts do not indicate that, nationwide the 'general

consuming public' would recognize the mark." 2011 WL 890501, at *9.  The Complaint here

contains no factual allegations at all that would plausibly support Plaintiff's naked contention

that the KAKEYTAUGHTME mark would be recognized across the United States by the general

consuming public as a designation of source.  *See id.*; *see also Intercollegiate Women's*

*Lacrosse*, 505 F. Supp. 3d at 588 (dismissing dilution claim because plaintiff "failed to plead any

facts that would indicate that its trademarks are sufficiently 'famous' among the general

consuming public to qualify for dilution protection").

 Similarly, Count VI fails to plead sufficient facts to support other necessary elements of

the claim for dilution under the TDRA.  As explained above, the Complaint does not allege facts

showing that Facebook is using the mark in commerce.  15 U.S.C. § 1125(c); *see also* Sections

III.B.3.a and III.B.3.b.  Moreover, the Complaint alleges no facts that the competing marks dilute

the quality of Plaintiff's mark, or has had any effect whatsoever on the capacity of Plaintiff's

mark to identify and distinguish goods and services.  *Id.*; *see also Ringling Bros.*, 170 F.3d at

452.  Again, the Complaint simply recites the legal elements themselves, without any supporting

factual allegations.  *See* Compl. ¶¶ 56-58.

 For all of the above reasons, Count VI fails to state a claim and should dismissed.

## C. Section 230 of the Communications Decency Act Separately Bars Counts I, III, and VII

 Separate and apart from Plaintiff's failure to plead facts that would state a claim,

Plaintiff's claims for Breach of Contract (Count I), Tortious Interference with Prospective

Relations (Count III), and Unfair and Deceptive Trade Practices (Count VII) are moreover statutorily barred by Section 230 of the Communications Decency Act.  47 U.S.C. § 230.

Under Section 230(c)(1), "[n]o provider . . . of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."  47 U.S.C. § 230(c)(1).[9]  Accordingly, this Circuit has affirmed that "any cause of action that would make service providers liable for information originating with a third-party user of the service" is barred by Section 230.  *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997); *see also Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 254 (4th Cir. 2009) ("[CDA's] provisions bar state-law plaintiffs from holding interactive computer service providers legally responsible for information created and developed by third parties.").

As noted in *Zeran*, a leading case by the Fourth Circuit interpreting the statute, the purpose of this statutory immunity is in part "to maintain the robust nature of Internet communication and, accordingly, to keep government interference in the medium to a minimum."  *Id.* at 330.  Thus, lawsuits seeking to hold a service provider liable for its exercise of traditional editorial functions—"such as deciding whether to publish, withdraw, postpone, or alter content—are barred."  *Id.*  Absent narrow exceptions, "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with" Section 230.  47 U.S.C. § 230(e)(3); *see also Zeran*, 129 F.3d at 334 (holding Section 230 "supersede[s] conflicting common law causes of action.").

---

[9] "Interactive computer service" is defined as "any information service, system or access software provider that provides or enables computer access by multiple users to a computer server..." § 230(f)(2).  An "information content provider" is "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the internet or any other information computer service."  § 230(f)(3).

Section 230 protects a defendant from suit or liability if three conditions are met: (1) "Defendant is a provider of an interactive computer service;" (2) "the postings at issue are information provided by another information content provider;" and (3) "Plaintiff's claims seek to treat Defendant as a publisher or speaker of third party content." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 564 F. Supp. 2d 544, 548 (E.D. Va. 2008), *aff'd*, 591 F.3d 250 (4th Cir. 2009). All three conditions are satisfied here, providing this Court with an independent basis to dismiss Plaintiff's Counts I, III, and VII with prejudice.[10]

    1.   <u>Facebook Is a "Provider" of an "Interactive Computer Service"</u>

It is well-established, including by this Court, that Facebook is an interactive computer service. *See, e.g.*, *Jefferson*, 2018 WL 3241343, at *5 (finding Facebook "analogous to the prototypical [interactive computer service] of an online message board."); *see also Klayman v. Zuckerberg*, 753 F.3d 1354, 1357 (D.D.C. June 13, 2014) ("Facebook qualifies as an interactive computer service."); *Sikhs for Justice, Inc. v. Facebook, Inc.*, 697 F. App'x 526, 526 (9th Cir. 2017) ("[I]t is undisputed that Facebook is an interactive computer service provider."). Like the Facebook platform, Instagram allows "[i]nternet subscribers [to] post comments and respond to comments posted by others." *Jefferson*, 2018 WL 3241343, at *5. And Plaintiff herself alleges Instagram allows users to "post[] regular photos and videos" on a "feed" and that users can "like posts, comment on them, and share them with other people." Compl. ¶¶ 4-7. The first Section 230 condition is met on the face of the pleadings.

---

[10] Because dismissal under Section 230 is based on a statutory preemption to certain claims, dismissal should be with prejudice. *See, e.g., Jones*, 2020 WL 6263412, at *4; *Force v. Facebook, Inc.*, 934 F.3d 53, 69–70 (2d Cir. 2019), *cert. denied*, 140 S.Ct. 2761 (2020); *Fyk v. Facebook, Inc.*, 808 F. App'x 597, 598 (9th Cir. 2020), *cert. denied*, 141 S.Ct. 1067 (2021); *Doe v. MySpace, Inc.,* 528 F.3d 413, 418 (5th Cir. 2008).

2.    <u>The Complaint Is Based on Information Provided by Another Information Content Provider</u>

Second, the information at issue in this suit was provided by another information content provider, as opposed to Facebook or Instagram.  Two categories of information are alleged to be at issue: (1) Plaintiff's Instagram account and the content she posted therein (Count I), and (2) the content posted by the purported "imitation" accounts (Counts III and VII).  Based on the pleadings, both categories constitute information "provided by another information content provider."  47 U.S.C. § 230(c)(1); *see Nemet Chevrolet, Ltd.,* 591 F.3d at 254 ("[CDA's] provisions bar state-law plaintiffs from holding interactive computer service providers legally responsible for information created and developed by third parties.").

As to the first category, the Complaint readily alleges that the information was provided by the "another information content provider"—the Plaintiff.  *See Jones v. Twitter, Inc.*, No. CV RDB-20-1963, 2020 WL 6263412, at * (D. Md. Oct. 23, 2020) (finding this factor met where plaintiff brought suit for Twitter's deletion of plaintiff's tweet).  The Complaint alleges that "Plaintiff started a business under the name KAKEYTAUGHTME" to sell adult toys and products, and "promoted her business on Instagram."  Compl. ¶¶ 14-16.  The Complaint conversely does not allege that Facebook created or provided any of the content that was disabled.

As to the second category, the Complaint does not allege that Facebook created or developed the information or content in the purported "imitation" accounts that were created on the Instagram platform.  Instead, the Complaint merely alleges that "Facebook has permitted new false and imitation accounts."  Compl. at ¶ 21.  The Fourth Circuit has held that this is precisely the conduct that Section 230 protects.  *See Nemet Chevrolet Ltd.*, 591 F.3d at 254 (holding

21

Section 230 precludes from liability "the interactive computer service provider who merely enables that content to be posted online").

        3.      <u>Plaintiff Seeks to Treat Facebook as a Publisher or Speaker</u>

Finally, the third prerequisite is met because, as outlined in more detail below, Plaintiff's claims under Counts I, III, and VII seek to treat Facebook as a publisher or speaker of the content at issue. *See Zeran*, 129 F.3d at 330 (Section 230 protects against liability for an interactive computer service "deciding whether to publish, withdraw, postpone, or alter content."). Where a plaintiff seeks to hold a provider of interactive computer services liable for decisions about what content is removed from the service or what content remains, that activity falls within the protections of Section 230. *Id.*; *see also Russell v. Implode-Explode Heavy Indus. Inc.*, No.CV DKC 08-2468, 2013 WL 5276557, at *6 (D. Md. Sept. 18, 2013) (holding Section 230 provides immunity whether a platform's "decision comes in the form of deciding what to publish in the first place or what to remove among the published material") (quoting *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1170 (9th Cir. 2008)) (internal citations omitted).

        a.      *Count I – Breach of Contract*

Plaintiff's claim for Breach of Contract is premised on Facebook's alleged removal of her account and content, and is therefore barred by Section 230. It is well-settled that the decision whether to remove content or an account from the platform is the platform's exercise of editorial discretion protected by Section 230. *See Zeran*, 129 F.3d at 330; *Fair Hous. Council of San Fernando Valley*, 521 F.3d at 1170–71. That the action is pled as a breach of contract, as opposed to a tort, does not change the analysis. *See Beyond Sys., Inc. v. Keynetics, Inc.*, 422 F. Supp. 2d 523, 536 (D. Md. 2006) (citing *Schneider v. Amazon.com, Inc.*, 108 Wash. App. 454,

464 (2001) (dismissing breach of contract claim under Section 230 because the activity pertains to the exercise of editorial discretion)).  Count I is barred and should be dismissed with prejudice.

> b.     *Counts III and VII – Tortious Interference and Unfair and Deceptive Trade Practices*

Plaintiff's claims under Counts III and VII—both premised on Facebook's alleged failure to remove purportedly false and imitation accounts—likewise are barred by Section 230.  In *Zeran*, the Fourth Circuit affirmed that Section 230 bars plaintiffs from bringing claims premised on a platform's alleged failure to remove or screen purportedly illegal content posted by third parties.  129 F.3d at 335.  As the Fourth Circuit explained:

> Congress' purpose in providing the § 230 immunity was thus evident. Interactive computer services have millions of users . . . [t]he amount of information communicated via interactive computer services is therefore staggering. The specter of tort liability in an area of such prolific speech would have an obvious chilling effect. It would be impossible for service providers to screen each of their millions of postings for possible problems. Faced with potential liability for each message republished by their services, interactive computer service providers might choose to severely restrict the number and type of messages posted. Congress considered the weight of the speech interests implicated and chose to immunize service providers to avoid any such restrictive effect.

*Id.* at 331.  As explained above, the essence of Counts III and VII are premised on Facebook's alleged failure to stop imitation accounts from appearing on its platform and/or its failure to remove such accounts and their content from the site.  *See* Section III.B.3.  This is precisely the activity that is protected by Section 230.  *See Nemet*, 591 F.3d at 254; *Zeran*, 129 F.3d at 330; *see also Jones*, 2020 WL 6263412, at *4 (holding that Section 230 barred plaintiff's claim for tortious interference when it was premised on Twitter's removal of plaintiff's tweet).  Because Plaintiff's cause of action seeks to make Facebook liable "for information originating with the third party user of the service," it is barred by Section 230.

Because Facebook meets all three conditions with respect to Counts I, III, and VII, those counts are barred by Section 230 and should be dismissed, with prejudice.

**D.   In the Alternative, the Case Should Be Transferred to the Northern District of California**

In the alternative, to the extent any claims are not dismissed, the Court should transfer this case to the Northern District of California because the parties agreed to the valid forum selection clause in Instagram's Terms of Use. *See Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tx.*, 571 U.S. 49, 59 (2013). In *Atlantic Marine*, the Supreme Court held that where "the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause" under 28 U.S.C. § 1404(a). 571 U.S. at 59. While § 1404(a) instructs the court to consider a number of factors when deciding a motion to transfer, when there is a valid forum selection clause, the courts "should not consider arguments about the parties' private interests[,]" including the plaintiff's choice of forum and convenience of the parties. *Atl. Marine*, 571 U.S. at 64; *see also United States of America for the Use and Benefit of John E. Kelly & Sons Elec. Construction, Inc. v. Hartford Fire Ins. Co.*, CV No. 8:19-cv-02924-PX, 2020 WL 704989 (D. Md. Feb. 12, 2020). Instead, "the plaintiff must bear the burden of showing why the court should not transfer the case to the forum to which the parties agreed" and "[o]nly under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied." *Atl. Marine*, 571 U.S. at 63.

1.   <u>The Parties Agreed to Litigate in the Northern District of California.</u>

Plaintiff assented to the Instagram Terms of Use when she opened an account, and thereby agreed that "any cause of action, legal claim, or dispute . . . arising out of or related to these Terms or Instagram . . . not arbitrated or resolved in small claims court . . . will be resolved

24

exclusively in the U.S. District Court for the Northern District of California."  Compl., Ex. A.  In relying on these Terms of Use in the Complaint, Plaintiff admits to agreeing to them.  *See* Compl. ¶ 13.

As alleged, all of Plaintiff's claims fall within the scope of this forum-selection clause because they all "aris[e] out of or are related to [the Terms of Use] and Instagram" and Plaintiff has not brought any of them in arbitration or small claims court.  They should be litigated in the Northern District of California per the parties' agreement.

2. The Forum-Selection Clause Is Valid

A forum-selection clause is presumed valid.  *Atl. Marine* at 62 n.5.  As a result, "a forum selection clause reverses the presumptions that would otherwise apply: instead of heavily favoring the plaintiff's chosen forum and placing the burden on the defendant, the forum selection clause is given controlling weight in all but the most exceptional cases, and the plaintiff bears the burden of proving why it should not be enforced."  *BAE Sys. Tech. Sol. & Servs., Inc. v. Republic of Korea's Def. Acquisition Program Admin.*, 884 F.3d 463, 471 (4th Cir. 2018) (holding that the *Atlantic Marine* framework applies to mandatory forum selection clauses). Indeed, courts routinely enforce forum-selection clauses contained in online terms of service. *See, e.g.*, *Oeste v. Zynga, Inc.*, No. CV GLR-20-1566, 2021 WL 1785139, at *3 n. 3 (D. Md. May 5, 2021) (enforcing forum-selection clause contained in Zynga's terms of service published on its website); *see also We Are The People, Inc. v. Facebook, Inc.*, No. 19-cv-8871(JMF), 2020 WL 2908260 (S.D.N.Y. June 3, 2020) (enforcing Facebook forum selection clause and transferring case to California); *Dolin v. Facebook, Inc.*, 289 F. Supp. 3d 1153 (D. Haw. 2018) (same); *Miller v. Facebook, Inc.*, No. 1:09-CV-2810-RLV, 2010 WL 9525523, at *1 (N.D. Ga. Jan. 15, 2010) (upholding the forum-selection clause because doing otherwise "could wreak

25

havoc on the entire social-networking internet industry").

Plaintiff has offered no basis for deviating from this established approach, and therefore cannot overcome the presumption that the forum-selection clause contained in Instagram's Terms of Use is valid.

      3.    <u>Plaintiff Cannot Show Any Extraordinary Circumstances to Rebut the Presumption that this Court Should Enforce the Forum-Selection Clause.</u>

Finally, given the valid forum selection clause, Plaintiff cannot meet her burden to show any extraordinary circumstances that would warrant finding that the public interest weighs against transfer. To the contrary, the public interest strongly favors enforcing the forum-selection clause because allowing valid forum-selection clauses to be ignored would "wreak havoc on the entire social-networking internet industry." *Miller*, 2010 WL 9525523, at *1.  The undue burden of litigating claims in countless jurisdictions "would have potential adverse consequences for the users of Facebook's social-networking site and for other internet companies." *Id.*

Because Plaintiff cannot show that the forum-selection clause is invalid, and because she cannot establish that the public interest factors disfavor transfer, the Court should enforce the forum-selection clause and transfer any remaining portion of this case to the Northern District of California.

## IV.    CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint with prejudice.  To the extent any claims survive, the Court should transfer those remaining claims to the Northern District of California.

Dated: January 21, 2022

                             */s/ Justine Deitz*
                             Jonathan A. Direnfeld, Md. Bar # 28859
                             Justine Deitz, Md. Bar # 20934
                             ORRICK, HERRINGTON & SUTCLIFFE LLP

Columbia Center
1152 15th Street, N.W.
Washington, D.C. 20005-1706
Tel: 202-339-8400
Fax: 202-339-8500
jdirenfeld@orrick.com
justine.deitz@orrick.com

Caroline K. Simons (*pro hac vice*)
Laura B. Najemy (*pro hac vice*)
ORRICK, HERRINGTON & SUTCLIFFE LLP
222 Berkeley Street, Suite 2000
Boston, MA 02116
Tel: 617-880-1800
Fax: 617-880-1801
csimons@orrick.com
lnajemy@orrick.com

*Attorneys for Defendant Facebook, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I, Justine Deitz, an attorney, do hereby certify that on this January 21, 2022, I have caused a true and correct copy of the foregoing MEMORANDUM OF LAW IN SPPORT OF DEFENDANT FACEBOOK, INC.'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER VENUE, to be filed through the Court's CM/ECF system, and will serve the below Counsel of Record via U.S. mail, first-class, postage-prepaid:

Jimi Kolawole
Kolawole Law Firm LLC
7517 Cedar Grove Lane
Elkridge, MD 21075
(443) 546-8146
oakolawole@justklf.com

*/s/ Justine Deitz*